DOWNEY, Judge.
Robert Walton, a police officer, sued his employer, the City of Lake Worth, for wrongfully refusing to promote him. Ap-pellee recovered damages in the amount of $75,000, together with $30,000 in attorney’s fees, and the City appeals. Walton cross appeals from the court’s denial of his motion for new trial to obtain additional damages for humiliation and mental anguish.
The background facts leading up to the instant litigation are necessary. In 1973 appellee joined the Lake Worth Police Department as a patrolman. Immediately pri- or to this employment Walton had been in the United States Army for three years. At the time he joined the police force, promotions were governed by the Lake Worth Police and Fire Civil Service Rules. These rules established a five-member Civil Service Board and a system of open, competitive examinations. A “rule of one” was used to determine promotions, i.e., the single person with the highest score on an examination was entitled to be promoted *1139 when a vacancy occurred. Also affecting civil service promotions was the system of veterans’ preference points established under Chapter 295, Florida Statutes (1979). The preference point system requires that veterans, under certain circumstances, be given additional points to be added to their test scores so that they be given preference in promotions.
After Walton took the sergeant’s examination in November 1979 and requested an award of veterans’ preference points under Chapter 295 (1979), two vacancies for the position of sergeant occurred on the force. Walton’s request for veterans’ points was denied, and it is uncontested that Walton would have been entitled to the sergeant’s promotion in February 1980 if his test score had been augmented by the veterans’ points. Without the veterans’ points he was not entitled to the promotion.
In February 1980 the Civil Service Board of the City filed suit for declaratory relief naming approximately twelve police officers as defendants, asking the court to determine whether veterans’ preference points were to be added to an officer’s test scores and, if so, the procedure therefor. That proceeding resulted in a final judgment on July 21, 1980, holding that veterans’ preference points were to be added. Thereafter, in the same proceeding, Walton filed what he styled a petition for writ of mandamus in which he asked the court to issue its writ to the Civil Service Board requiring it to show cause why it should not comply with the final declaratory judgment of July 21, 1980, by awarding appel-lee veterans’ points. Subsequently, the Civil Service Board changed the “rule of one” to a “rule of three” and another officer was promoted to sergeant, prompting Walton to seek an order of contempt in the declaratory action. While the motion for contempt was pending, Walton decided he had had enough and commenced this suit against the City for damages.
The amended complaint was cast in two counts, 1) for damages for refusing to grant appellee a promotion to which he was entitled by civil service rules, and 2) for damages for violation of his civil rights pursuant to 42 U.S.C. § 1983, together with attorney’s fees as provided in 42 U.S.C. § 1988.
A jury returned a verdict in which it found that a) the City violated Walton’s rights secured by Chapter 295, Florida Statutes (1979), in failing to promote Walton; b) the City violated Walton’s right to due process as secured by 42 U.S.C. § 1983 in failing to promote Walton; c) Walton was due $75,000 as compensatory damages for all harm except humiliation and mental anguish; and d) Walton was due nothing for humiliation and mental anguish. The circuit court entered a final judgment on the verdict and denied Walton’s motion for a new trial to obtain additional damages for humiliation and mental anguish. It subsequently awarded Walton a $30,000 attorney’s fee on authority of 42 U.S.C. § 1988. On appeal, the City attacks the judgment and attorney’s fee award, and on cross appeal Walton attacks the order denying his motion for new trial.
The City presents six points on appeal, only two of which warrant extended discussion since we hold that 1) under civil service rules appellee was entitled to a promotion and the City’s failure to promote him was contrary to law; 2) the record supports the damages awarded. The two points that need discussion present the questions: (a) was the City entitled to a directed verdict on Count II claiming damages under 42 U.S.C. § 1983, and (b) was the City entitled to a directed verdict because the suit was barred by a prior judgment? The first point is most important here because, if no cause of action lies under Section 1983, the $30,000 attorney’s fee awarded appellee must be reversed.
Section 1983 provides that “[ejvery person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects ... any citizen of the United States ... to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....” Walton claimed the benefits of that section *1140 by alleging that, under color of law, the City deprived him of his right to promotion to which he was entitled under the civil service rules, thereby denying him due process of law in violation of his constitutional rights.
A key decision outlining the scope of Section 1983 is Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). That decision involved the question whether an unte-nured assistant professor at a state university who was not rehired after his first academic year had been deprived of liberty or property within the meaning of the Fourteenth Amendment by not being afforded a hearing prior to nonrenewal of his employment contract. Although it held that the relevant state statutes created no liberty or property interest in the position insofar as Roth was concerned, the Court inferentially held that a property interest in statutory benefits results when a person seeking those benefits meets statutory criteria for obtaining them; a person becomes entitled to benefits if he proves he is within the statutory terms of eligibility for those benefits. 408 U.S. at 577-578, 92 S.Ct. at 2709.
However, in order to recover under the federal act, one must show that the deprivation of his right to promotion according to law violated his constitutional right to due process. Due process is not denied him where, under state law, he can obtain full redress for the wrongs complained of. In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court said that Section 1983 could apply to the deprivation of property rights of Taylor, a prisoner, resulting from the negligence of prison officials if his constitutional right to due process was violated. Nevertheless, since state law provided adequate remedies to redress Taylor’s claim, the Court held that he was not denied due process and could not sue under Section 1983. The Court found a contrary holding would be unacceptable:
To accept respondent’s argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under “color of law” into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning “would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.”
451 U.S. at 544, 101 S.Ct. at 1917.
Thus, the Court, citing Bonner v. Coughlin, 517 F.2d 1311 (7th Cir.1975), modified en banc, 545 F.2d 565 (1976), announced the rule that:
“ ‘the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment.’ ”
451 U.S. at 542, 101 S.Ct. at 1916.
Later cases have extended the Parratt rule to situations involving the intentional deprivation (as opposed to negligent deprivation) of property rights. For example, in Vicory v. Walton, 721 F.2d 1062 (6th Cir.1984), the owner of a trailer sought damages under Section 1983 for deprivation of his personal property by the police during the investigation of several murders that occurred in the trailer. The Vicory court stated that the rationale of Parratt clearly covered intentional as well as negligent torts:
As we read Parratt, the principle being applied does not turn on the question of whether the claimed constitutional tort affecting property is caused by intentional conduct or negligent conduct or is based on strict liability. Nor does it matter whether the writ at common law *1141 would be in detinue (action for wrongful detention of a chattel by a bailor), trespass de bonis asportatis (action for carrying away plaintiffs chattels), trespass on the case (roughly speaking, an action for negligence) or a motion in a criminal case for return of property held as evidence. The reasoning of Parratt appears to extend at least to all section 1983 cases claiming a procedural due process injury to a property interest without regard to whether at common law a plaintiff would have sued in tort or contract and would have based his action on intent, negligence or strict liability.
Policy considerations do not require a federal hearing in procedural due process cases that can be corrected in state court. So long as a state’s damage remedies are not shown to be inadequate in theory or practice — that is, so long as there is no systemic problem with the state’s corrective process — we see no purpose to be served by further complicating section 1983 liability for damages in property cases by distinctions grounded in different types of intent, negligence and strict liability. After all, we are interpreting a general constitutional provision which forbids state deprivations of “property without due process of law,” not the Internal Revenue or some other statutory code requiring fine properly law distinctions.
721 F.2d at 1065 (footnote omitted).
The single Florida case we have found tends to support the application of Section 1983 to intentional acts. See Perdomo v. Jackson Memorial Hosp., 443 So.2d 298 (Fla. 3d DCA 1983).
Florida provides the means for adequate redress for a city’s wrongful failure to promote a policeman entitled by law to promotion. See Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976), which holds that a policeman who attains the highest score on a promotion test may maintain an action for damages for failure to promote under an ordinance that establishes a rule of one. Accordingly, because Walton had a state remedy for the City’s failure to promote him, we hold that he was not entitled to pursue a civil rights action under Section 1983, since his constitutional right to due process was not violated. Since he did not prove a cause of action under Section 1983, the allowance of attorney’s fees pursuant to Section 1988 was error.
The second point for discussion suggests Walton’s claim for damages was res judicata. The background facts alleged to support that defense are that, when Walton filed his petition for mandamus in the declaratory judgment suit to enforce the final judgment therein, he was required to assert the claim for damages which he now asserts in this suit. We reject that contention. The petition was effectively nothing more than a motion to enforce the provisions of the final declaratory judgment and resulted simply in an order directing the Civil Service Board to comply with the declaratory judgment. It must be remembered the suit in which these matters were being litigated was a suit for declaratory relief instituted by the Civil Service Board against twelve police officers all seeking promotion. The key issue on everyone’s mind was the question, whether veterans’ preference points were to be awarded and, if so, how. When the court held the preference points should be awarded, the Board did nothing, so Walton sought to enforce the declaratory judgment and filed the petition asking for relief. At that point Walton was not interested in damages, but in getting his promotion. The present suit was not filed until the Civil Service Board had changed the rules of the game and it became apparent that the city was not going to promote Walton. Walton did not maintain an action against the Board or the City until he filed the present action for damages. Furthermore, the parties involved in the two cases are different and the thing sued for in each case is different. The pleading that bore the style of writ of mandamus was directed to the Civil Service Board, and this suit for damages was against the City. We therefore hold that *1142 Walton's suit against the City was not barred by res judicata.
Accordingly, the judgment for Walton for damages in the amount of $75,000 and the denial of Walton’s motion for new trial are affirmed. The order awarding Walton attorney’s fees of $30,000 is reversed.
AFFIRMED IN PART; REVERSED IN PART; and remanded.
HERSEY and GLICKSTEIN, JJ., concur.
GLICKSTEIN, J., did not participate in oral argument.